STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-237

STATE OF LOUISIANA

VERSUS

JONATHAN JEROME GUILLORY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 12616-14
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

John Foster DeRosier
District Attorney – 14th Judicial District
Karen C. McLellan
Assistant District Attorney – 14th Judicial District
P. O. Box 3206
Lake Charles, LA 70602-3206
Telephone: (337) 437-3400
COUNSEL FOR:
    Plaintiff/Appellee - State of Louisiana

Edward Kelly Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602-1641
Telephone: (337) 491-0570
COUNSEL FOR:
    Defendant/Appellant - Jonathan Jerome Guillory

**THIBODEAUX, Chief Judge.**

Defendant Jonathan Jerome Guillory appeals his conviction of second degree murder. Mr. Guillory was charged with the second degree murder of Felton Paul Boutte in violation of La.R.S. 14:30.1. A jury found Mr. Guillory guilty as charged, following which he was sentenced to life imprisonment without the benefit of suspension of sentence, probation, or parole. Mr. Guillory has perfected a timely appeal, wherein he alleges insufficient evidence to find him guilty of second degree murder, that the trial court erred when it denied two of his peremptory challenges for cause, and granted the State's *Batson* challenge. For the following reasons, we affirm and remand with instructions.

## I.

## ISSUES

We must determine:

1.  whether the trail court erred in finding Mr. Guillory guilty of second degree murder;

2.  whether the trial court erred in denying Mr. Guillory's challenges for cause; and

3.  whether the trial court erred in granting the State's *Batson* challenge regarding potential jurors.

## II.

## FACTS

Jonathan Guillory was dating Tanaga Gaines and the two had a young daughter together named Gynesis. Lashonda Boutte and the deceased, Felton Paul Boutte, had been married for twenty-four years. They had three children: Tanaga Gaines, Mrs. Boutte's child by her first husband, and Javon and Deaunte Boutte.

Mrs. Boutte testified that she and her husband took care of Gynesis as much as they could because they were concerned about Mr. Guillory's lifestyle and drug use. On February 6, 2014, following a series of heated text message exchanges, Mr. Boutte went to Mr. Guillory and Ms. Gaines' home and confronted Mr. Guillory with concerns about his parenting. The argument became physical. Following an exchange of blows, Mr. Guillory left the living room where the fight had broken out, went to the hallway to retrieve a gun, and returned to the living room where he shot Mr. Boutte three times.

Mr. Guillory was found guilty of second degree murder pursuant to La.R.S. 14:30.1. Mr. Guillory contends that the evidence was insufficient to establish specific intent to kill or inflict serious bodily harm to Mr. Boutte. Furthermore, Mr. Guillory argues that the trial court erred when it denied two of his peremptory challenges for cause and granted the State's *Batson* challenge.

III.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The record does not indicate that the trial court advised Mr. Guillory of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8(C). Thus, we find the trial court should be directed to inform Mr. Guillory of the provisions of Article 930.8(C) by sending appropriate written notice to him within ten days of the rendition of this opinion and to file written proof that Mr. Guillory received the notice in the record of the proceedings. *State*

2

*v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

IV.

**<u>LAW AND DISCUSSION</u>**

**Second Degree Murder**

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979).

Mr. Guillory argues that there was insufficient evidence to sustain the verdict of second degree murder pursuant to *Jackson*, 443 U.S. 307. Specifically, he contends that the State failed to show specific intent to kill Mr. Boutte. He argues that the evidence only supports a conviction for manslaughter, which is a lesser and included offense of second degree murder.

"Second degree murder is the killing of a human being . . . [w]hen the offender has the specific intent to kill or inflict serious bodily harm." La.R.S. 14:30.1(A)(1). "Specific intent need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant." *State v. Shanks*, 97-1885, p. 4 (La.App. 1 Cir. 6/29/98), 715 So.2d 157, 159 (citing *State v. Wisinger*, 618 So.2d 923, 931 (La.App. 1 Cir.), *writ denied*, 625 So.2d 1063 (La.1993)). Furthermore, "[s]pecific intent is a legal conclusion to be resolved ultimately by the trier of fact." *Id.* (citing *State v. Lewis*, 525 So.2d 215, 217 (La.App. 1 Cir.), *writ denied*, 531 So.2d 469 (La.1988)).

3

Manslaughter is defined as:

> A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]

La.R.S. 14:31(A)(1). "'Sudden passion' and 'heat of blood' are not elements of the offense of manslaughter; rather, they are mitigat[ing] factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them." *State v. Lombard*, 486 So.2d 106, 110 (La.1986). A defendant who shows by a preponderance of the evidence that these mitigating factors are present is entitled to the verdict of manslaughter. *Id.*

Mr. Guillory argues that he acted on impulse and that the circumstances surrounding the death of Mr. Boutte indicate that the offense was committed in sudden passion or the heat of blood immediately caused by provocation sufficient to deprive a man of his self-control and cool reflection. Mr. Guillory and Mr. Boutte had been arguing throughout the day through text messages until Mr. Boutte arrived at Mr. Guillory's trailer wherein a physical confrontation ensued. While the testimony establishes that there was a fist fight, the circumstances were not nearly volatile enough to warrant a reduction of the charge of second degree murder to manslaughter. The fist fight had already terminated before the shooting occurred. Additionally, an argument alone is not "sufficient provocation in order to reduce a murder charge to manslaughter." *State v. Miller*, 98-642, p. 10 (La.App. 3 Cir. 10/28/98), 720 So.2d 829, 834, *writ denied*,

4

98-3119 (La. 5/14/99), 741 So.2d 659. Family members were attempting to calm and separate the two men. Furthermore, Mr. Guillory walked away from Mr. Boutte and retrieved a gun from his bedroom or a box in the hallway, and then walked back into the living room. Following the shooting, Mr. Guillory appeared calm and stood talking to people until the police arrived. He did not exhibit the behavior of someone who had just shot his girlfriend's stepfather in sudden passion or heat of blood. During the police interrogation, Mr. Guillory detailed how Mr. Boutte attacked him and kicked him when he was down, but there was no evidence of such an attack.

Viewed in the light most favorable to the prosecution, the evidence was insufficient for the jury to infer the mitigating factors for heat of blood or sudden passion. Aiming a gun directly at a victim and pulling the trigger supports a finding of specific intent to kill or inflict serious harm to the victim. *State v. Lawson*, 08-123 (La.App. 5 Cir. 11/12/08), 1 So.3d 516. Here, Mr. Guillory pointedly left the room, returned with a gun, and shot Mr. Boutte three times, apparently while Mr. Boutte was attempting to flee. The Calcasieu Parish Coroner, Dr. Terry Welke, a medical doctor and forensic pathologist, conducted the autopsy on Mr. Boutte's body. Dr. Welke testified that one gunshot entered Mr. Boutte's lower back and exited in the groin area. One gunshot entered Mr. Boutte's left waist area and exited the right thigh, and finally, the third bullet went through Mr. Boutte's right arm, entering the backside of the arm. The gunshot wounds were primarily in Mr. Boutte's back and left side, suggesting that he was attempting to escape when Mr. Guillory began shooting him. We agree with the trial court that the State proved Mr. Guillory committed the offense of second degree murder beyond a reasonable doubt.

**Challenge for Cause**

Mr. Guillory argues that the trial court erred when it denied his challenges for cause of two potential jurors, after which he exhausted all of his peremptory challenges. He asserts that the denial of both of the challenges for cause constituted a substantial violation of his constitutional and statutory rights. In *State v. Mitchell*, 08-136, pp. 14-15 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 730 (footnotes omitted), the fifth circuit stated the standard of review:

> Article I, § 17 of the Louisiana Constitution guarantees that "[t]he accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." A district court's erroneous ruling depriving a defendant of a peremptory challenge substantially violates that defendant's rights and constitutes reversible error. Prejudice is presumed when the trial court erroneously denies a challenge for cause, and the defendant ultimately exhausts his peremptory challenges. Thus, to prevail on appeal, a defendant must demonstrate 1) erroneous denial of his challenge for cause, and 2) use of all of his peremptory challenges. Additionally, the defendant must show that, when the trial court denied his challenge for cause, he used one of his peremptory challenges curatively to remove that juror, thereby reducing his number of peremptory challenges, or waive the issue on appeal. This is so even in a case where the defendant uses all of his peremptory challenges. A trial court is given broad discretion in ruling on challenges for cause, and such rulings will only be reversed when a review of the entire voir dire reveals the trial court abused its discretion.

*Potential Juror Mr. Picou*

First, Mr. Guillory contends that potential juror Mr. Picou should have been removed based on his challenge for cause. During *voir dire*, Mr. Picou stated that he was a former police officer and current fire chief. Defense counsel comprehensively questioned Mr. Picou regarding his allegiance to the law

enforcement community. When it was time to accept or reject potential jurors, the State accepted Mr. Picou and the defense challenged for cause, stating that Mr. Picou's responses indicated that he would give more credence to police officers' testimony. Following extensive questioning, the trial court, however, believed that Mr. Picou had been dealt with thoroughly and that "he did salvage himself, so we're going to leave him on there." Simply because a defendant might be uncomfortable with a former police officer being on the jury does not make that juror partial towards law enforcement. We do not believe the trial court abused its discretion by denying Mr. Guillory's challenge for cause of Mr. Picou.

*Potential Juror Mr. Hooks*

As the State and defense counsel indicated their choices for the jury, defense counsel challenged potential juror Mr. Hooks for cause, stating that Mr. Hooks indicated during *voir dire* that he might know Mr. Boutte's son, Javon Boutte. However, during *voir dire*, the State showed Mr. Hooks a picture of Javon Boutte, and Mr. Hooks stated that was not the man he thought was Javon Boutte. For this reason, the trial court denied defense counsel's challenge of Mr. Hooks for cause. On appeal, Mr. Guillory argues that the reason he challenged Mr. Hooks was that during *voir dire* Mr. Hooks indicated that he was of the opinion there should be limitations placed on the ownership of assault weapons by private individuals. This was not the reason given to the trial court for his challenge during *voir dire*. This argument cannot now be raised pursuant to La.Code Crim.P. art. 841(A) which states in part: "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." For these reasons we affirm the trial court's denial of both of the challenges for cause.

7

***Batson* Challenge**

Mr. Guillory argues that the trial court erred when it sustained the State's *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986) challenges of two jurors. He argues that the State did not meet its burden of proving a *prima facie* case of discrimination and wrongfully placed the burden of proof on Mr. Guillory. Specifically, the State raised a *Batson* argument by noting that defense counsel had peremptory excused nine of ten women. On appeal, Mr. Guillory argues that the trial court erred when it reseated two women, Ms. Landry and Ms. McDonald, after defense counsel had challenged them for cause and with gender-neutral reasons for the challenge.

In *State v. Nelson*, 10-1724, 10-1726, p. 7 (La. 3/13/12), 85 So.3d 21, 27-28 , the supreme court discussed *Batson* challenges:

> In *Batson* the United States Supreme Court held that the use of peremptory challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. *Batson*, 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in *Batson* was initially adopted by this Court in *State v. Collier*, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D).

The supreme court then outlined how the objecting party established a prima facie showing of a *Batson* violation:

> (1) the striking party's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory was used to strike the venireperson on account of his being a member of that cognizable group. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712; [*State v.*] *Sparks*, [88-17, p. 37 (La. 5/11/11),] 68 So.3d [435,] 468; [*State v.*] *Givens*, [99-3518, p. 5 (La. 1/17/01),] 776 So.2d [443,] 449. If the trial court determines the opponent failed to establish the threshold requirement of a *prima facie* case (step one), then the analysis is at an end and

> the burden never shifts to the proponent of the strike to articulate neutral reasons (step two). *Sparks*, 68 So.3d at 468-89; *State v. Duncan*, 1999-2615 (La.10/16/01), 802 So.2d 533, 544.

*Id*. at 29. In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419 (1994), the Supreme Court extended the *Batson* prohibition to gender discrimination when selecting a jury.

In *State v. Tilley*, 99-569, p. 5 (La. 7/6/00), 767 So.2d 6, 13, *cert. denied*, 532 U.S. 959, 121 S.Ct. 1488 (2001) (citing *State v. Tyler*, 97-338 (La. 9/9/98), 723 So.2d 939, 942-43, *cert. denied*, 526 U.S. 1073, 119 S.Ct. 1472 (1999)), the Supreme Court stated that "[b]ecause the factual determination pertaining to intentional discrimination rests largely on credibility evaluations, the trial court's findings are entitled to great deference by the reviewing court."

The trial court noted the challenges of the nine women and found it to be "troubling." Defense counsel appeared to have difficulty articulating clear and specific reasons for striking each woman. First, contrary to defense counsel's assertion, Ms. McDonald did not have a negative attitude toward guns. In fact, she stated that her husband owns guns and they have guns in their home. Secondly, upon review of the *voir dire* transcript, defense counsel confused the responses of Ms. Landry and Ms. Sackett. On appeal, Mr. Guillory argued that Ms. Landry was frustrated by the shooting death of her grandson and that because she was not the mother, she could not find out information regarding the shooting. However, Ms. Landry was twenty-three years old and an English teacher at McNeese State University and had no grandson. For the following reasons, we affirm the trial court's grant of the State's *Batson* challenge.

9

## V.

## <u>CONCLUSION</u>

Accordingly, we affirm Mr. Guillory's conviction, the denial of Mr. Guillory's challenges for cause, and the State's *Batson* challenges.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**