COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

VERSUS

EDWIN ALBERT MILLER

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 330,429
HONORABLE WILLIAM GREGORY BEARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Shannon J. Gremillion, and Van H. Kyzar, Judges.

AFFIRMED.

Phillip Terrell, Jr.
District Attorney – 9th Judicial District
Numa V. Metoyer, III
Assistant District Attorney – 9th Judicial District
Amani P. Augustine
Assistant District Attorney – 9th Judicial District
P. O. Dristrict 7358
Alexandria, LA 71306
Telephone:  (318) 473-6650
COUNSEL FOR:
        Plaintiff/Appellee - State of Louisiana

Edward Kelly Bauman
Louisiana Appellate Project
P. O. Box 1641
Lake Charles, LA 70602
Telephone:  (337) 491-0570
COUNSEL FOR:
        Defendant/Appellant - Edwin Albert Miller

**THIBODEAUX, Chief Judge.**

Defendant Edwin Albert Miller was charged with one count of stalking, second offense, a violation of La.R.S. 14:40.2(4). After a twelve-person jury unanimously found him guilty of the offense, he was sentenced to twenty years at hard labor without the benefit of probation, parole, or suspension of sentence, with credit for time served. On appeal, Defendant asserts that his defense counsel's failure to object to the impaneling of a twelve-person jury in the trial of a six-person-jury offense constitutes a claim for ineffective assistance of counsel, and thus requires a reversal of his conviction. He additionally argues that the trial court erred in denying his challenges for cause. Finally, Defendant challenges his sentence as unconstitutionally excessive.

For the following reasons, we affirm Defendant's conviction and sentence.

I.

**ISSUES**

We must decide:

(1)    whether the erroneous trial by a jury of twelve instead of a properly-constituted jury of six is reversible error;

(2)    whether the trial court erred in denying Defendant's challenges for cause; and

(3)    whether the sentence imposed by the trial court was unconstitutionally excessive, in violation of La.Const. art. 1, § 20.

II.

## FACTS AND PROCEDURAL HISTORY

In 2009, Defendant was arrested and pleaded guilty to stalking M.S.,[1] a violation of La.R.S. 14:40.2. He was initially ordered to pay a $1,000 fine and serve a one-year sentence in Rapides Parish jail. However, the sentence was suspended, and Defendant was thereafter placed on supervised probation for two years.

The matter giving rise to the instant appeal occurred in 2016, when Defendant was charged by Bill of Information with stalking, second offense, a violation of La.R.S. 14:40.2(4), alleging that he did willfully, maliciously, and repeatedly follow and/or harass and threaten M.S. again with the intent to place her in reasonable fear of serious bodily harm. He entered a plea of not guilty to the offense.

A jury trial was held thereafter. Before conducting *voir dire*, the court noted that it was going "to select a twelve-person jury for a criminal case." After a panel of twelve jurors had been accepted and sworn, defense counsel then objected to the composition of the jury by noting that under La.Code Crim.P. art. 782, a twelve-person jury is only appropriate when the punishment is necessarily confinement at hard labor, whereas a six-person jury is appropriate when the punishment may be confinement at hard labor instead. Because stalking, second offense, is punishable "with or without hard labor" under La.RS. 14:40.2(4), defense counsel argued that Defendant's case ought to be heard by a six-person jury. The

---

[1]In accordance with La.R.S. 46:1844(W), initials are used to preserve the confidentiality of crime victims who are minors, victims of sex offenses, and victims of human trafficking-related offenses. The perpetration of stalking under La.R.S. 14:40.2 is classified as a "sex offense" under the statute, we shall thus keep confidential the victim's name. La.R.S. 46:1844(W)(2)(b).

2

trial court, however, denied the defense's request for a six-person jury, and twelve jurors were accepted and sworn to the jury.

During *voir dire*, each side was granted twelve peremptory challenges. Defense counsel raised several challenges for cause with respect to prospective jurors, and they were denied by the trial court. The case was then decided before a panel of twelve jurors, which unanimously found Defendant guilty of the offense charged.

In analyzing the sentencing factors of La.Code Crim.P. art. 894.1, the trial court concluded from the evidence that Defendant was a most egregious offender and thus sentenced him to serve a maximum term of twenty years imprisonment, without the benefit of parole, probation, or suspension of sentence, with credit for time served. A Motion to Reconsider Sentence was denied.

On appeal, Defendant now argues that defense counsel's failure to object to the twelve-person jury prior to the jury's swearing constitutes ineffective assistance of counsel such that Defendant's conviction should be reversed. Further, he asserts that the trial court erroneously denied his challenges for cause. Finally, Defendant challenges his sentence as unconstitutionally excessive.

III.

**LAW AND DISCUSSION**

**Ineffective Assistance of Counsel**

Defendant asserts a claim for ineffective assistance of counsel at trial. He contends that his defense counsel's failure to object to the impaneling of a twelve-person jury for a six-person offense constituted deficient performance of

3

such a serious nature that prejudice must be presumed. As a result, Defendant argues that his conviction should be reversed.

At the outset, the issue of ineffective assistance of counsel is more appropriately addressed in an application for post-conviction relief filed before the trial court, where a full evidentiary hearing can be conducted. *State ex rel. A.B.*, 09-870 (La.App. 3 Cir. 12/9/09), 25 So.3d 1012. However, where the record discloses sufficient evidence to rule on the merits of an ineffective assistance claim, an appellate court may consider the issues raised on appeal in the interests of judicial economy. *Id.*

Finding the record in this case sufficient,[2] we shall assess Defendant's claim of ineffective assistance of counsel under the two-part test established by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under the *Strickland* analysis, Defendant must first demonstrate that his trial counsel's performance was deficient and that he was prejudiced by the deficiency.

> Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland*, *supra*, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a

---

[2]The trial court polled the jury after the announcement of the guilty verdict, after which the trial judge explained he would ascertain that "a sufficient number" of jurors concurred in the verdict before making the ballots available to counsel for the parties. The ballots were then to be placed into an envelope and sealed in the court record. The trial court in fact found "a sufficient requirement number for the verdict to be proper and good" and counsel for both parties concurred.

The ballots were not included in the record on appeal. This court issued an order on December 13, 2018, to the Clerk of Court for the Ninth Judicial District to send the written jury ballots filed under seal. The clerk then filed a supplemental record enclosing a copy of the jury ballots. The supplemental record shows all twelve members of the jury found Defendant guilty of stalking, second offense. Therefore, we find that the information supplied by the supplemental record is sufficient to allow this court to address the issue of ineffectiveness of counsel in this appeal without relegating it to post-conviction relief.

4

reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, *supra*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La.App. 4 Cir. 1992).

This Court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Bienemy*, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So.2d 714, 724 (La.1987).

*State v. Schexnaider*, 03-144, p. 18 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 462

(quoting *State v. Griffin*, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34,

40).

Defendant cites as deficient performance his trial counsel's failure to

object to a twelve-person jury where the charge of stalking, second offense imposes

a permissive, rather than mandatory, punishment of confinement at hard labor.

Louisiana Code of Criminal Procedure Article 782(A) states that "[c]ases in which

punishment is necessarily confinement at hard labor shall be tried by a jury

composed of twelve jurors, ten of whom must concur to render a verdict." La.Code

Crim.P. art. 782(A). [3] In contrast, "[c]ases in which the punishment *may* be

---

[3]Louisiana Code of Criminal Procedure Article 782(A) was recently revised to require a twelve-person jury to render a unanimous verdict in cases in which punishment is necessarily confinement at hard labor. It now provides that "[a] case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, *all of whom must concur to render a verdict*." La.Code Crim.P. art. 782(A) (emphasis added).

5

confinement at hard labor *shall* be tried by a jury composed of six jurors, all of whom must concur to render a verdict." *Id*. (emphasis added). The crime of stalking, second offense is punishable "with or without hard labor[.]" La.R.S. 14:40.2(B)(4). Notwithstanding any deference accorded to trial counsel's strategy, we submit that the case should have been tried before a jury of six, rather than twelve, veniremen.

While there is no doubt that an error occurred with respect to the size of the selected jury in this case, our supreme court has held that "the error in trying a six-person jury offense in a 12-person jury forum no longer constitutes a non-waivable structural defect in the proceedings, but 'falls within the vast category of trial errors which are subject to harmless error analysis and which warrant reversal only where the defendant is actually prejudiced.'" *State v. Brown*, 11-1044, p. 3 (La. 3/13/12), 85 So.3d 52, 53 (quoting *State v. Jones*, 05-226, p. 3 (La. 2/22/06), 922 So.2d 508, 511).

In light of the unanimous verdict reached by the twelve-juror panel, we cannot say that Defendant has been prejudiced in his case. But for counsel's failure to object to the composition of the jury, any six of the twelve jurors in this case would nevertheless have rendered a guilty verdict because all twelve jurors found Defendant guilty. In fact, Defendant received six additional factfinders than constitutionally mandated, and was thus afforded greater protection than required by law. Therefore, because the result of the proceeding would not have been any different had defense counsel objected prior to the acceptance of the jury, we find that the error of impaneling a twelve-person jury in the trial of a six-person offense

---

We note, however, that the amendment applies to crimes committed on or after January 1, 2019. Because this offense pre-dates January 1, 2019, the amendment of La.Code Crim.P. art. 782(A) has no bearing on this case.

was harmless. Accordingly, we find that Defendant was not actually prejudiced due to the errors of both defense counsel and the trial court.

**Challenge for Cause**

Defendant argues that the trial court erred in denying his challenges for cause regarding juror, Ms. Humphries; second alternate juror, Ms. Trotter; and three potential jurors, Ms. Jordan, Ms. Ryder, and Ms. Mier. As a result, Defendant alleges that the erroneous denials caused him to exhaust all of his peremptory challenges. [4]

The grounds for which a juror may be challenged for cause are set forth in La.Code Crim.P. art. 797. The defense may challenge a juror for cause if "[t]he juror is not impartial, whatever the cause of his partiality." La.Code Crim.P. art. 797(2). A juror may additionally be challenged for cause on the ground that "[t]he relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]" La.Code Crim.P. art. 797(3). The defense may also challenge a juror for cause on the basis that he or she "will not accept the law as given to him by the court[.]" La.Code Crim.P. art. 797(4).

The Louisiana Supreme Court has set forth the following standard for reviewing a trial court's denial of challenges for cause:

---

[4]We note here that both the State and the defense erroneously received twelve peremptory challenges each. While we find that either side should have only been granted six peremptory challenges given the instant trial for an offense not necessarily punishable by imprisonment at hard labor pursuant to La.Code Crim.P. art. 799, this error of the trial court was nevertheless harmless. As stated in the discussion of the preceding assignment of error, Defendant was afforded a greater number of challenges than required by law, and thus, we do not find that his case was prejudiced from such additional protections.

7

A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. Prejudice is presumed when a challenge for cause is denied erroneously by a trial court and the defendant ultimately exhausts his peremptory challenges. An erroneous ruling depriving an accused of a peremptory challenge is a substantial violation of his constitutional and statutory rights and constitutes reversible error. "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied." However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to law and evidence.

*State v. Scott*, 04-1312, pp. 16-17 (La. 1/19/06), 921 So.2d 904, 921 (citations omitted), *overruled on other grounds by State v. Dunn*, 07-878 (La. 1/25/08), 974 So.2d 658. Moreover, this court has stated

When the defendant exposes the partiality of a juror, the juror may not be automatically excluded for cause. The state or the trial court may rehabilitate the juror by asking questions and obtaining answers demonstrating the juror's ability to decide the case impartially pursuant to law and evidence. Ultimately, the trial court has the power to determine whether or not a juror may be excused for cause.

*State v. Noel*, 15-617 (La.App. 3 Cir. 12/9/15), 181 So.3d 223, *rev'd on other grounds*, 16-43 (La. 10/18/17), 236 So.3d 523.

Accordingly, we shall review the challenges for cause denied by the trial court to determine whether the trial court abused its discretion.

Juror Ms. Humphries

When the parties considered Ms. Humphries, a nursing student, the State accepted her. The defense responded with a challenge for cause because

"[s]he's got tests, she's pregnant, she doesn't want to be here." The trial court then acknowledged that while Ms. Humphries affirmatively answered that her jury service would affect her life and her future, she would not miss any tests because of the trial, and thus the challenge for cause was denied. The trial court then held, "[s]he did answer affirmatively as far as affecting her life and future. However, I do think that she was rehabilitated."

Ultimately, the defense failed to object to the trial court's denial of its challenge for cause regarding Ms. Humphries. Instead, defense counsel expressly replied, "Accept[,]" and Ms. Humphries was then seated as juror number seven. Additionally, our review of the record reveals that while Defendant had six peremptory challenges remaining at the time the challenge for cause was denied, he did not use any to exclude Ms. Humphries.

> To prove there has been an error warranting reversal of a conviction,
>
> [A] defendant must demonstrate 1) erroneous denial of his challenge for cause, and 2) use of all of his peremptory challenges. Additionally, the defendant must show that, when the trial court denied his challenge for cause, he used one of his peremptory challenges curatively to remove that juror, thereby reducing his number of peremptory challenges, or waive the issue on appeal. This is so even in a case where the defendant uses all of his peremptory challenges.

*State v. Guillory*, 16-237, p. 6 (La.App. 3 Cir. 11/2/16), 206 So.3d 1153, 1157 (quoting *State v. Mitchell*, 08-136, pp. 14-15 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 730), *writ denied*, 16-2186 (La. 9/22/17), 227 So.3d 823. While this court has held that a defendant need not exhaust all of his peremptory challenges before complaining of a trial court's denial of his challenge for cause on appeal, the "defendant must still demonstrate prejudice arising from the ruling." *State v. Lormand*, 00-435, p. 8 (La.App. 3 Cir. 10/11/00), 771 So.2d 734, 738 (quoting *State*

*v. Guillory*, 97-179 (La.App. 3 Cir. 3/11/98), 715 So.2d 400, *writ denied*, 98-955 (La. 10/9/98), 726 So.2d 17), *writ denied*, 00-3214 (La. 11/2/01), 800 So.2d 866). "However, an erroneous ruling on a challenge for cause which does not deprive a defendant of one of his peremptory challenges will not provide grounds for a reversal of a defendant's conviction and sentence." *State v. Magee*, 11-574, pp. 26-27 (La. 9/28/12), 103 So.3d 285, 307, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56 (2013).

In this case, Defendant failed to raise an objection to the denial of his challenge for cause to Ms. Humphries before the trial court, but instead expressly accepted her. In light of these facts, Defendant cannot now complain of the trial court's denial of the challenge for cause on appeal where the defense's ultimate acceptance of Ms. Humphries was accompanied by neither an objection nor the exhaustion of all, let alone the exercise of any, of his six remaining peremptory challenges. As such, Defendant has failed to demonstrate that the trial court's refusal to sustain his challenge for cause has prejudiced him in any manner.

Alternate Juror Ms. Trotter

During *voir dire*, prospective juror Ms. Trotter stated that she had been the victim of a domestic violence incident between herself and her ex-husband. While charges were filed in the matter, Ms. Trotter stated that she dropped the charges later. However, upon further questioning from the State, Ms. Trotter affirmatively responded that her experience would not hamper her ability to be fair and that she would base the verdict on the law and evidence.

On appeal, appellate counsel cites the possibility that Ms. Trotter "could easily have second thoughts based on her prior experiences" as the basis for why the challenge for cause should have been granted. While the defense challenged

Ms. Trotter for cause before the trial court, it failed to state any of the grounds thereof as enumerated in La.Code Crim.P. art. 797.

> A defendant may not assign as error a court's refusal to sustain a challenge for cause made by him, unless he makes an objection at the time of the ruling that states the nature of the objection and grounds therefor. La. C. Cr. P. art. 800(A). Accordingly, in a challenge for cause, the challenging party has the burden of showing that a prospective juror should be excluded based on one or more of the grounds in La. C. Cr. P. art. 797.

*State v. Hampton*, 50,561, p. 14 (La.App. 2 Cir. 5/18/16), 195 So.3d 548, 557 (citation omitted), *writ denied*, 16-1181 (La. 5/26/17), 221 So.3d 854.

In ruling on Defendant's challenge for cause, the trial court found, "[s]he stated that she had no affect [sic] in this case. She thought everything was done fairly, she dropped the charges herself. I will deny the challenge for cause." In so ruling, the trial court named Ms. Trotter the second alternate juror. However, while Ms. Trotter heard all the evidence presented, she never participated in reaching the verdict because she was ultimately excused after closing arguments. Thus, while we do not believe that the trial court abused its discretion in denying the challenge for cause, we additionally find that any error arising therefrom was harmless given her ultimate discharge from the deciding jury panel.

Potential Juror Ms. Jordan

Prospective juror Ms. Jordan stated to the court during *voir dire* that her husband and brother worked for the Department of Corrections. She disclosed that her brother hired Phillip Terrell, the District Attorney for Rapides Parish, to

11

represent him in defending a malfeasance charge, which resulted in a successful expungement of the offense.[5]  The following colloquy took place:

> BY MR. METOYER [STATE]:
>
> . . . Would you be more likely to go my way because Mr. Terrell represented your brother?
>
> BY MS. JORDAN:
>
> Possibly.
>
> BY MR. METOYER:
>
> Possibly.  Okay.  And why don't you tell us why, possibly why?
>
> BY MS. JORDAN:
>
> It was a hard case.  I was real young so, I mean, of course I don't know any details about the case –
>
> . . . .
>
> BY MR. METOYER:
>
> But do you, what I'm asking you is this.  Do you think you can be fair to this man . . . even though I work for Mr. Terrell?  And I need you to be honest.  It's either yes or no?
>
> BY MS. JORDAN:
>
> Yes.
>
> BY MR. METOYER:
>
> You think you can.
>
> BY MS. JORDAN:
>
> (Nods in the affirmative)
>
> . . . .

---

[5]On appeal, Defendant incorrectly states that Ms. Jordan's brother is currently suing the Department of Corrections.  Ms. Jordan's actual testimony during *voir dire* was that her brother's lawsuit was completed in 2011 and that Mr. Terrell no longer represents her brother.

BY MR. METOYER:

Okay.  Would you be able to disregard the fact that I work for Mr. Terrell and just stick to the elements of the crime and the evidence that we present?  Would you base your opinion just on that?

BY MS. JORDAN:

Yes, sir.

BY MR. METOYER:

Okay.  So in that respect you could be fair to this defendant?

BY MS. JORDAN:

Yes, sir.

In challenging Ms. Jordan for cause, the defense argued that Ms. Jordan did not want to be there and noted that "she didn't want to get involved."  In ruling on the challenge, the trial court remarked that Ms. Jordan admitted a possible favoritism toward the State, but it nevertheless found that "she could be fair to the defendant and base everything on the evidence and testimony and not on the fact that just because Mr. Terrell is the DA [a]nd that she could be fair."

On appeal, Defendant cites Ms. Jordan's familial relationship to law enforcement officers and her brother's connection to Phillip Terrell in arguing that Ms. Jordan's "initial response should have been enough" for the challenge for cause to be granted.  However, at no point did Defendant argue to the trial court that Ms. Jordan's familial relationship to law enforcement officers and/or the district attorney was a basis for challenging her.  Therefore, we find that that ground was not properly preserved for review pursuant to La.Code Crim.P. art. 800(A).

Nevertheless, nothing in the record suggests that the trial court abused its discretion in denying the challenge for cause regarding Ms. Jordan.  Despite her

reservations about serving on the jury, she stated that she could put aside the State's counsel's association with Mr. Terrell. She affirmatively responded that she could base her opinions on the elements of the crime and the evidence and could think of no reason why she should not or could not serve as a juror.

Potential Juror Ms. Ryder

The defense challenged prospective juror Ms. Ryder for her associations with law enforcement, as well as her familiarity with two of the witnesses. During *voir dire*, Ms. Ryder stated to the trial court that her husband, father-in-law, brother-in-law, and brother have all worked or currently work in law enforcement. She also interned at the Federal Bureau of Prisons in 2001. Further, Ms. Ryder disclosed to the trial court that she knew two of the witnesses, Mr. Bruner and Mr. Collins, through her husband and that she socialized with them on several occasions, including Mr. Bruner's recent attendance at a barbeque at her home. Finally, Ms. Ryder disclosed that her mother's nephew is currently serving a life sentence in prison. Despite her many connections to law enforcement and familiarity with some of the witnesses, Ms. Ryder stated that she could remain fair. However, Defendant failed to raise the issues regarding Ms. Ryder's familial associations with law enforcement officers, her internship, and her cousin's imprisonment in its challenge for cause. Accordingly, this court may not consider those arguments which were not properly preserved on appeal. *See* La.Code Crim.P. art. 800(A).

Defendant also argues on appeal that the challenge for cause regarding Ms. Ryder should have been granted given her socializing with two of the witnesses. The following colloquy took place between the trial court and Ms. Ryder:

14

BY THE COURT:

You or [sic] connected in any way with the witnesses named?

BY MS. RYDER:

I know some of the witnesses.

BY THE COURT:

Who do you know?

BY MS. RYDER:

[Bruner] and Collins.

BY THE COURT:

And how do you know them?

BY MS. RYDER:

Just through my husband. [Bruner] was at our house this weekend.

BY THE COURT:

Socialize with them?

BY MS. RYDER:

Just on occasion.

BY THE COURT:

Knowing them under circumstances that you see them, does that in any way affect your ability to make a fair and impartial decision?

BY MS. RYDER:

No, sir.

In raising the challenge for cause, the defense speculated that Ms. Ryder talked about the case with Mr. Bruner at the barbecue, wherein he allegedly told her to "tell them you don't have any problem with cops." The record, however, shows

15

Ms. Ryder never indicated any such conversation ever took place. The State pointed out that the defense could have questioned her about the possibility of such a conversation had it suspected one. The State also noted that at the time of the barbecue, Ms. Ryder had no way of knowing she would be a possible juror in this case in which Mr. Bruner was a witness. Ultimately, Ms. Ryder testified that her association with these witnesses would not affect her ability to make a fair and impartial decision.

In *State v. Juniors*, 03-2425, p. 11 (La. 6/29/05), 915 So.2d 291, 306, *cert. denied*, 547 U.S. 1115, 126 S.Ct. 1940 (2006), our supreme court held that

> The existence of a relationship, even one of blood or marriage, is not sufficient to disqualify a juror unless the facts reveal that the nature of the relationship is such that it is reasonable to conclude it would influence the juror in arriving at a verdict. LSA-C.Cr.P. art. 797. The law does not require that a jury be composed of individuals who are totally unacquainted with the defendant, the person injured by the offense, the district attorney, or defense counsel. It requires that jurors be fair and unbiased. *Fairley*, 25,951 at 3, 645 So.2d at 216.

Here, the trial court determined that the challenge for cause should be denied based on Ms. Ryder's statement that she could be fair and impartial. Given the fact that the trial court was in the best position to evaluate Ms. Ryder's credibility, coupled with Ms. Ryder's answers demonstrating that she could decide the instant matter independent of her acquaintances, we conclude that the trial court did not abuse its discretion in denying the challenge for cause.

Potential Juror Ms. Mier

Prospective juror Ms. Mier stated during *voir dire* that she and her husband had been victims of crime when their home was burglarized fifteen years ago. The burglars were never caught, and Ms. Mier believed that law enforcement

did not properly investigate the matter. However, she stated that this would not affect her ability to digest the facts and make a fair and impartial decision in this case. Further, Ms. Mier raised her hand when the defense questioned if any of the jurors simply did not want to be there. She then stated that she is the primary caretaker and sole source of transportation for her eighty-six-year-old mother. While Ms. Mier stated that she would be thinking of her mother during the trial, she did not know of any other reason why she could not be fair and impartial.

On appeal, Defendant cites the prior burglary and Ms. Mier's status as her mother's caretaker as reasons why the challenge for cause should have been granted. "In Louisiana, the fact that a juror personally has been the victim of a crime will not necessarily preclude that juror from serving on a jury as long as the juror's partiality has been unaffected." *State v. Dorsey*, 10-0216, p. 38 (La. 9/7/11), 74 So.3d 603, 631. Further, Ms. Mier stated in both instances that she could remain fair and impartial. Nothing in the record suggests Ms. Mier's experience as a crime victim would bias her or that thinking of her mother would prevent her from being fair and impartial. Under these circumstances, we find that the trial court did not abuse its discretion in denying Defendant's challenge for cause of Ms. Mier.

**Excessive Sentence**

Defendant challenges his sentence as unconstitutionally excessive, in violation of La.Const. art. 1, § 20. He contends that the trial court erred in imposing a sentence of twenty years at hard labor without the benefit of probation, parole, or suspension of sentence for the offense of stalking, second offense. Specifically, he argues that the trial court failed to give adequate consideration to the sentencing guidelines imposed by La.Code Crim.P. art. 894.1, and that his sentence should be

17

more in line with that imposed by this court's ruling in *State v. Saucier*, 11-246 (La.App. 3 Cir. 11/9/11), 81 So.3d 691, *writ denied*, 12-227 (La. 6/22/12), 91 So.3d 966.

At trial, Defendant objected to his sentence. His Motion to Reconsider Sentence was denied. While he argues on appeal that the trial court erred by not considering the factors set forth in La.Code Crim.P. art. 894.1, the issue was not raised before the trial court. "Accordingly, this argument cannot be raised for the first time on appeal." *State v. Hebert*, 08-542, p. 3 (La.App. 3 Cir. 11/5/08), 996 So.2d 688, 690. Nevertheless, we find that the trial court adequately examined the statutory sentencing factors, as discussed below.

This court has set forth the following standard to be used in reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted) (second alteration in original).

An offender convicted of stalking, second offense faces a sentence of five to twenty years imprisonment and a fine of up to $5,000, or both. La.R.S.

14:40.2 (B)(4). While Defendant received a sentence for the maximum possible term of twenty years, he was not fined. Even though a penalty falls within the statutory sentencing range, however, it may still be unconstitutionally excessive:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789 (citations omitted), *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061. "While the trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983) (citing *State v. Ray*, 423 So.2d 1116 (La.1982); *State v. Keeney*, 422 So.2d 1144 (La.1982); *State v. Duncan*, 420 So.2d 1105 (La.1982)). Nevertheless, "[t]he appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." La.Code Crim.P. art. 881.4(D). Moreover, "maximum sentences will be reserved for the most egregious or blameworthy of offenders[.]" *State v. Telsee*, 425 So.2d 1251, 1254 (La.1983).

In *Saucier*, 81 So.3d 691, this court affirmed the defendant's sentence of ten years for stalking, second offense. While the trial court in that case found no aggravating or mitigating factors under La.Code Crim.P. art. 894.1, it did note the

defendant's criminal history of more than thirty arrests and convictions spanning over three decades, some of which were for crimes of violence. The defendant had violated four protective orders and had "subjected the victim to years of abuse and threats of violence." *Id.* at 704. The victim in that case was the defendant's former wife with whom he had a child, and the defendant had previously been convicted of stalking another victim.

In reviewing the record in this case, the trial court stated the following in imposing Defendant's sentence:

> Reviewing the victim impact statements and reviewing prior cases, and also what transpired over the course of a four[-]day trial. [Sic] The matter started in August of two thousand nine with an arrest. It's been going on for over eighteen years of stalking. Protective orders in oh-nine did not work. [M.S.] was a victim of a matter where she was performing her occupation as a professional person trying to render help to [Defendant's] mother. To the point to where [M.S.] had to stop that in order for her own being [sic]. Whatever reasons [Defendant] had by being infatuated with [M.S.], I do not know. However[,] they have directly affected her family. It came to the point of being more aggressive. And [M.S.] was not comfortable with it to where she terminated her employment. Continuing on to where uninvited presence with weapons causing [M.S.] to feel like she is scared to death [sic]. On another night to where at the house uninvited of where physical contact was made of hands around the neck to where [M.S.] thought she was going to die [sic]. [Defendant] continued with the phone calls, gifts and candy of a signature to the point to where [M.S.]'s family had to take matters of property, phone unlisting even to the point to where it was finally after her repeated requests from law enforcement something was done about the matter with the second arrest. The pattern continued even after the arrest all the way up until trial. The passing on the highway, the driving in the driveway, being around the home, all matters taken into this court. All matters I see where [M.S.] was emotionally distressed and feared bodily harm or her death.

The testimony of M.S., a registered nurse, confirmed the trial court's findings. She testified she had no personal relationship with Defendant.[6] She first met Defendant when she began working as a home health nurse for his mother sometime in 1998. From the beginning, M.S. described Defendant as "a very forward person . . . . Sometimes intrusive." He began bringing her unwanted gifts such as flowers and candy, which she never accepted, and found that his behavior became "unusual" once he became "more and more aggressive." In an effort to minimize her contact with Defendant, M.S. reported the situation to her direct supervisor.

Beginning in either late 1998 or early 1999, M.S. testified that Defendant would repeatedly drive by her home. One night, she and her husband heard the dog barking and saw a flash of light coming from Defendant's red Ford Ranger pickup truck. Defendant then walked up to her vehicle and put a beer can box under her windshield wipers. As she and her husband stood in the doorway, they watched Defendant walking and noticed that he had a pistol in his hand.

M.S. eventually reported Defendant to the police after he continued driving by her home, honking his horn. She testified that she "was scared to death" after an incident where Defendant spray painted his phone number on her mailbox and on the road in front of her home. However, Defendant's behavior continued after M.S. reported him to the police. She recalled that late one night, while visiting with a friend, she heard the dog barking and saw headlights pull into her driveway. She opened the door to see that Defendant was swiftly approaching her doorway. At that point, M.S. told Defendant that if he didn't leave, she would call the police.

---

[6]Although one of the protective orders stated that M.S. and Defendant were dating partners, the victim testified this was incorrect.

Defendant then pushed his way through her door, grabbed her by the neck, and put her up against the wall. M.S.'s friend then threatened Defendant that she would call the police if he did not stop, when Defendant jerked the phone out of M.S.'s hand and the wall, grabbed her friend, and then left with the phone.

Finding Defendant's behavior "too aggressive" and "inappropriate" M.S. quit her position as a home health nurse and went back to the hospital. At this point, however, Defendant began to initiate further contact with M.S. She testified that Defendant would call her multiple times a day to the extent that she had to get an unlisted phone number. She would find candy on the hood of her car at work, and sometimes find Defendant sitting in the parking garage. M.S. recalled an incident at the grocery store where she noticed Defendant staring at her from the next line over, only to go out to her car and find a card addressed to her left by Defendant in her driver door handle. While M.S. called the police numerous times, either the police were unable to find Defendant, or they would go to his house, but in neither case was Defendant arrested.

In 2009, Defendant was finally arrested after driving past M.S.'s home and throwing beer in her face while she was outside at her mailbox. Because of Defendant's actions, M.S. put up a gate, installed a security system, hired a security guard to sit outside her home when her husband worked at night, and left her house to stay with family members when left alone. She took a concealed weapons class and carried a weapon at all times thereafter. M.S. also obtained multiple protective orders against Defendant.

Defendant's behavior never changed after his arrest in 2009, however. Although sometimes the activity was less frequent, it never stopped; in fact, it continued until a few days before the trial was held in this case. Defendant continued

to leave beer cans and candy in M.S.'s mailbox and drive slowly by her home, honking the horn, sometimes more than five or ten times throughout a single day. She estimated that she reported Defendant's behavior to the police between ten and twenty times. One evening, M.S. went outside and smelled cigarette smoke. The next morning, she found "a Bud Light can sitting on the porch rail." Sometime in 2017, Defendant's vehicle met M.S. and her husband on the road as their vehicle was pulling a trailer full of lumber. Defendant crossed the center line and "threw his hand out of the window" toward them, which pushed them off the road and into the ditch.

M.S. testified she did not feel safe, "live[d] in a prison with no bars[,]" and "enjoy[ed] nothing by [her]self anymore." Being stalked by Defendant had changed her life. In 2016, she testified that Defendant was again arrested for "[d]riving by [her] house repeatedly. Honking the horn. Crossing the center line. Throwing [a] beer can at [her], cursing [her], screaming at [her]." While the incident where Defendant threw a beer can was similar to the episode in 2009, M.S. also testified that on another occasion, Defendant stopped his vehicle and threw whiskey in her face.

As established by M.S.'s testimony, we find that the record supports the sentence imposed by the trial court. Moreover, we agree with the trial court's conclusion that Defendant was a most egregious offender. Defendant was convicted twice for stalking the same victim over a period spanning eighteen years, with the evidence demonstrating no change in behavior following the first conviction. The trial court properly considered Defendant's repeated behavior over a period of time. We find that the imposition of the maximum sentence in this case is not so grossly disproportionate to the severity of the crime that it either shocks the sense of justice

or inflicts any needless pain and suffering.  Accordingly, we find that the trial court did not abuse its discretion in sentencing Defendant to twenty years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence.

## V.

## <u>CONCLUSION</u>

Based upon the foregoing, this court affirms the judgment of the trial court in all respects.  Accordingly, we affirm Defendant Edwin Albert Miller's conviction for stalking, second offense, a violation of La.R.S. 14:40.2(4), as well as his sentence to twenty years imprisonment without the benefit of probation, parole, or suspension of sentence, with credit for time served.

**AFFIRMED**.