# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-549

**STATE OF LOUISIANA**

**VERSUS**

**VICTOR D. GUILLORY**
**A/K/A VICTORY GUILLORY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-182838
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## WILBUR L. STILES
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**CONDITIONALLY AFFIRMED AND REMANDED.**

**Chad M. Ikerd**
**Ikerd Law Firm, LLC**
**Post Office Box 2125**
**Lafayette, Louisiana 70502**
**(337) 366-8994**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Victor Guillory**

**Donald Dale Landry**
**District Attorney**
**Kenneth P. Hebert**
**Assistant District Attorney**
**15th Judicial District**
**Post Office Box 3306**
**Lafayette, Louisiana 70501**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**STILES, Judge.**

Defendant, Victor D. Guillory, appeals his sentence of two years at hard labor for stalking – domestic violence (protective order). For the reasons set forth herein, we conditionally affirm the conviction and sentence, and remand to the trial court to conduct an evidentiary hearing and make a competency ruling.

## FACTS AND PROCEDURAL HISTORY

Defendant was involved in a helicopter crash in late August 2021, during which he landed his disabled helicopter in the Mississippi River. He was found floating on a propane tank approximately 12 hours later in the river. Following his helicopter crash, Defendant reached out to his ex-wife, Andree Courville, the mother of his children, to discuss estate planning and to be sure his daughters were taken care of. After not hearing back from his ex-wife, Defendant drove to her house and left a note asking her to call him. After this attempt, Defendant and his ex-wife's husband, Coy J. Courville, began exchanging text messages. Defendant's messages were threatening and harassing in nature. Both Andree Courville and Coy Courville were granted protective orders against Defendant, ordering him to stay away from the Courvilles. After receiving notice of the protective orders, Defendant continued to send threatening messages and videos.

Defendant was arrested for violating the protective orders and cyberstalking. As a condition of his bond, Defendant was required to stay away from the Courvilles and remain at home on twenty-four hour home incarceration with ankle monitoring. The trial court subsequently revoked Defendant's bond for violations of the home incarceration condition.

On November 12, 2021, the State filed a bill of information against Defendant, Victor Guillory, charging him with cyberstalking, in violation of La.R.S. 14:40.3,

two counts of violation of a protective order, in violation of La.R.S. 14:79(B)(1), and stalking while a protective order is in place, in violation of La.R.S. 14:40.2(B)(3).

On March 24, 2022, Defendant pled guilty to stalking while a protective order is in place, and in exchange, the State dismissed the remaining charges. On March 31, 2022, the court sentenced Defendant to serve two years at hard labor along with a $500.00 fine and court costs of $435.50. The court advised that any time spent on house arrest would not count towards time served and that Defendant is prohibited from receiving good time. The court further recommended that Defendant receive a mental health evaluation.

Defendant filed a motion to reconsider sentence, and a hearing was held on May 24, 2022. At this hearing, the trial court reconsidered the original sentence and omitted the portion of the sentence which stated Defendant was not allowed to earn good-time credit. The trial court then ordered that Defendant was eligible to earn good-time credit. The court further noted that the sentence was not enhanced pursuant to a habitual offender bill of information. However, the court maintained the two-year sentence. Defense counsel orally objected to the court's ruling.

A timely motion for appeal was filed, and Defendant is now before this court raising one assignment of error on appeal.

## ASSIGNMENT OF ERROR

Defendant claims the trial court's maximum sentence for stalking, under the facts of this case, is both constitutionally and statutorily excessive.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent.

Louisiana Code of Criminal Procedure Article 647 requires the issue of capacity to be determined by the court in a contradictory hearing:

> The issue of the defendant's mental capacity to proceed shall be determined by the court in a contradictory hearing. The report of the sanity commission is admissible in evidence at the hearing, and members of the sanity commission may be called as witnesses by the court, the defense, or the district attorney. Regardless of who calls them as witnesses, the members of the commission are subject to cross-examination by the defense, by the district attorney, and by the court. Other evidence pertaining to the defendant's mental capacity to proceed may be introduced at the hearing by the defense and by the district attorney.

In this case, the State filed a motion for the appointment of sanity commission which was granted by the trial court on November 28, 2021. The court ordered, among other things, that the members of the sanity commission submit their findings regarding Defendant's capacity to understand the proceedings against him. The physicians appointed to the sanity commission filed their reports on February 3, 2022, and February 17, 2022, both concluding that Defendant had the mental capacity to proceed. Information received from the trial court indicates that there was no finding of mental capacity to proceed by the trial court.[1]

In *State v. Thomas*, 47,020 (La.App. 2 Cir. 4/11/12), 91 So.3d 1207, a sanity commission was appointed and ordered to determine the defendant's capacity to proceed; however, the defendant pled guilty *before the commission reported* and the trial court made a finding of competency. Relying on La.Code Crim.P. arts. 642 and 647, the second circuit vacated the defendant's guilty plea and sentence and

---

[1] We note that at the beginning of the plea proceeding, the court asked Defendant whether he read and understood his plea form and whether he understood that he could be sentenced anywhere within the sentencing range. He confirmed to the court that he was entering the plea voluntarily and that no one had forced him to sign the plea form. Following this line of questioning, the court stated that it found Defendant competent and that he understood the charges and the possible penalties. We find this was *not* a finding of mental competency to proceed as required by La.Code Crim.P. art. 647. Rather, it was an assessment of whether Defendant was entering his guilty plea knowingly and voluntarily.

3

remanded the case for the trial court to conduct a sanity hearing to determine the defendant's competency to proceed. Compare *State v. Gowan*, 96-488 (La. 3/29/96), 670 So.2d 1222, where, because the trial court had *not yet ruled on* the defendant's motion for appointment of a sanity commission and thus had not determined that a sanity commission should be appointed, the defendant's failure to request a competency hearing prior to entering his guilty plea waived his right to have the motion ruled upon.

In *State v. Nomey*, 613 So.2d 157 (La.1993), the trial court appointed a sanity commission but failed to conduct a competency hearing prior to accepting the defendant's guilty plea the day following examination. The reports, both concluding the defendant was competent to proceed, were filed with the trial court approximately two weeks after the defendant pled guilty. The supreme court vacated the defendant's guilty pleas and remanded the case to the trial court for further proceedings.

Here, the sanity commission was appointed, and although a determination of competency was not made by the trial court, the physicians' reports, both finding Defendant competent to proceed, had been filed prior to the guilty plea proceeding. Thus, we find this case falls in line closely with *State v. Juniors*, 05-649 (La. App. 3 Cir. 12/30/05), 918 So.2d 1137, *writ denied*, 06-267 (La. 9/15/06), 936 So. 2d 1257, *cert. denied*, 549 U.S. 1226, 127 S.Ct. 1293 (2007). As a *raised* issue, the defendant in *Juniors* contended the trial court erred in permitting his case to be tried without finding him competent to proceed. At the defendant's request, the court appointed a sanity commission to examine him. The physicians each reported via letter dated June 21, 2000, that they felt the defendant was competent to proceed to trial. However, no hearing was held, and the trial court did not make a finding regarding

4

the defendant's capacity to proceed before the case proceeded to trial and the defendant was convicted. This court concluded that a *nunc pro tunc* hearing was appropriate and conditionally affirmed the defendant's conviction and sentence pending the outcome on remand:

> The federal courts of appeals, although noting that retrospective competency hearings are not favored, have allowed nunc pro tunc hearings on the issue of competency if a meaningful inquiry into the defendant's competency can still be had. The trial court is in the best position to determine whether it can make a retrospective determination of defendant's competency during his trial and sentencing. The determination of whether a trial court can hold a meaningful retrospective competency hearing is necessarily decided on a case-by-case basis. The State bears the burden to show the court that the tools of rational decision are available.
>
> A "meaningful" determination is possible "where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings." Additionally, "[w]hen determining whether a meaningful hearing may be held, we look to the existence of contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records. The passage of time is not an insurmountable obstacle if sufficient contemporaneous information is available." The court in *Miller v. Dugger*, 838 F.2d 1530 (11th Cir.1988) noted that it had never given the district courts a list of factors that must be met in order to determine that a nunc pro tunc determination of competency is possible, but stated that relevant factors include time, availability of witnesses and the existence of evidence on the state record about the defendant's mental state at the time.

*State v. Snyder*, 98-1078, pp. 30-31 (La.4/14/99), 750 So.2d 832, 855 (citations omitted) (footnote omitted).

In the present case, Defendant was examined by the two members of the sanity commission. Additionally, the record indicates that Defendant may have been evaluated by other mental health experts, given defense counsel's statements at a hearing on July 31, 1998, that

5

an "ex-parte motion for funds for psychiatric experts" had already been granted, that a forensic social worker that had been ordered to conduct the investigation was no longer employed by the clinic being used, and that an order substituting a replacement would be presented to the court. Thus, there may be information regarding Defendant's competency that is available to the trial court that is not contained in this appellate record. Accordingly, the trial court may be able to make a retrospective determination regarding Defendant's competency at the time of trial.

For these reasons, we remand this case to the trial court for the sole purpose of determining whether such a hearing is now possible and, if so, to conduct such an evidentiary hearing. If the trial court concludes that Defendant was competent, no new trial is required. If the trial court finds a meaningful inquiry cannot be had, or if it determines after the hearing that Defendant was not competent at the time of his trial, Defendant is entitled to a new trial. *See Snyder*, 750 So.2d 832; *Mathews*, 809 So.2d 1002.

This assignment of error requires further action by the trial court.

*Id.* at 1145 (alteration in original).

Likewise, in *State v. Pullen*, 19-4 (La.App. 5 Cir. 8/7/19), 279 So.3d 443, on error patent review, the fifth circuit remanded for a *nunc pro tunc* hearing on the issue of competency to proceed. A sanity commission was appointed in response to the defendant's motion. The doctors were to report at a competency hearing which was set but taken up and continued five times with no ruling or judgment in the record as to the trial court's finding of competency.

The consequence of the failure to resolve the issue of a defendant's capacity is either nullification of the conviction and sentence or a nunc pro tunc hearing to determine competency retrospectively. *State ex rel. Seals v. State*, 831 So.2d at 833. Such decision is made on a case by case basis. *See State v. Willie*, 235 So.3d 1339, 1349 (La. App. 5th Cir. 2017) (*citing Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *State v. Anderson*, 996 So.2d 973, 992 (2008)). A nunc pro tunc hearing evaluates whether there was a bona fide doubt of the offender's competency to stand trial when he was originally tried. *Id.*; *see also State v. Snyder*, 98-1078 (La. 4/14/99), 750 So.2d 832, 855.

In order to determine if the defendant's due process rights are adequately protected, a "meaningful" nunc pro tunc hearing must be ensured. *See Reynolds v. Norris*, 86 F.3d 796, 802 (8th Cir. 1996). The

trial court is vested with the discretion to make the decision of whether a meaningful inquiry into competency may still be had. *Seals v. State*, 831 So.2d at 833, *citing State v. Snyder*, 98-1078 (La. 4/14/99), 750 So.2d 832, 855. A meaningful determination is possible "where the state of the record, together with such additional evidence as may be relevant and available, permits an accurate assessment of the defendant's condition at the time of the original state proceedings." *Id.* The State bears the burden of providing sufficient evidence for the court to make a rational decision in a nunc pro tunc hearing. *Seals*, 831 So.2d at 834.

Unless the record in this case is incomplete and the trial judge actually conducted a hearing which addressed defendant's competency to proceed and rendered a judgment, this Court is left with two options: either vacate defendant's guilty plea and sentence or remand this matter to the district court to address the completeness of the record, and if complete, then to conduct a nunc pro tunc hearing if a meaningful determination on defendant's competency at the time he entered his plea can be proven. *See State ex rel. Seals*, 831 So.2d at 834.

In *State v. Nomey*, the Louisiana Supreme Court nullified a defendant's guilty plea where the court accepted his guilty plea without holding a hearing to address the findings of the sanity commission. *Nomey*, 613 So.2d at 157, 159-160 (La. 1993). Despite the reports of the sanity commission providing evidence to show that the defendant would have likely been found competent, the Supreme Court held the court of appeal erred in remanding the case for a retroactive sanity hearing. *Id.* at 162. The Court in *Nomey* found that the defendant was deprived of the protective procedures of the sanity commission hearing prior to the entry of his guilty pleas, and the question of whether there was sufficient evidence to show that the defendant was competent to proceed at the time of his plea "misse[d] that point" that he was deprived of his due process rights. *Id.* at 161. The Court opined that under certain limited circumstances a retroactive determination of sanity may be permissible if a meaningful inquiry into the defendant's competence can still be had. *Nomey*, 613 So.2d at 161, FN8.

In contrast, in *State v. Snyder*, the Louisiana Supreme Court found that the proper remedy for failing to investigate a defendant's claims of incompetency would be a nunc pro tunc hearing if the trial court determines that meaningful inquiry into a defendant's competency is still possible. *State v. Snyder*, 98-1078 (La. 4/14/99), 750 So.2d 832, 854. In *Snyder*, the Louisiana Supreme Court was persuaded by the reasoning of the federal courts of appeals in allowing nunc pro tunc hearings if the trial court determines that retrospective determination is possible, based on factors, determined to be relevant by the Eleventh Circuit, such as the passage of time, the availability of witnesses, and the existence of evidence on the record about the defendant's mental state at the time. *Id.* at 855. (*citing Miller v. Dugger*,

838 F.2d 1530, 1544 (11th Cir. 1988)). While there is no list of determinative factors, the passage of time will not be decisive if there is available "contemporaneous medical evidence, the recollections of non-experts who had the opportunity to interact with the defendant during the relevant period, statements by the defendant in the trial transcript, and the existence of medical records." *Snyder*, 750 So.2d at 855, *citing Reynolds v. Norris*, 86 F.3d 796, 803 (8th Cir. 1996). In *Snyder,* the court remanded the case back to the district court to determine whether a retroactive sanity commission was possible, and if so, to hold an evidentiary nunc pro tunc hearing to determine the defendant's competency prior to his trial. *Id.* The Louisiana Supreme Court encouraged the court to take additional evidence, including the records and testimony of the examining physicians. *Id.*

In a case similar to the instant case, this Court vacated a defendant's conviction when it was unclear from the minute entry whether the trial court had made a determination regarding the defendant's competency to stand trial. *State v. Robinson*, 09-371 (La. App. 5 Cir. 3/23/10), 39 So.3d 692, 698. In the *Robinson* case, the defense requested, and the trial court ordered, a mental examination and a sanity commission. The minute entry and transcripts contain discussions of the doctors finding the defendant competent, but the trial judge stated that he was waiting on the report to make his determination. The defense counsel later withdrew his motion for a sanity hearing. This Court held that the facts of that case did not allow for a retroactive competency hearing, relying on the due process arguments of *Nomey*. *Id.* at 704. Upon the state's writ application, the Louisiana Supreme Court reversed this Court's judgment and remanded for a determination of whether a nunc pro tunc finding of competency remained possible in light of the *Snyder* case. *State v. Robinson*, 10-924 (La. 12/17/10), 50 So.3d 156.

In a more recent case, this Court addressed the issues of what inquiries and actions a trial court should address on remand when a sanity hearing was not held prior to a guilty plea. *State v. Willie*, 17-252 (La. App. 5 Cir. 12/20/17), 235 So.3d 1339. In that case, a defendant's prior counsel filed a motion for mental examination. After the first counsel withdrew from representation, the newly appointed counsel did not request a hearing on the outstanding motion before allowing his client to plead guilty. *Id.* at 1343-44. This Court opined inherent difficulties exist in nunc pro tunc determinations, but the trial court is in the best position to determine whether it can make a retrospective determination. *Id.* at 1349-50. In that instance, on remand, the trial court must inquire into whether a sanity commission would be able to retroactively determine whether a defendant was actually competent to stand trial at the time he pled guilty. *Willie*, 235 So.3d at 1352. If the trial court finds that a sanity commission would not be able to retroactively determine whether defendant was competent at the time he pled guilty, then the trial court must vacate the original conviction

and sentence and take further action depending upon defendant's current capacity to proceed. *Id.* If a determination is possible, however, then the trial court must appoint a sanity commission to "retroactively opine" on defendant's competency to proceed on the date he was originally convicted and sentenced. If the court finds defendant competent at the time of his original plea, then the conviction and sentence may be affirmed. On the other hand, if the trial court finds that the defendant lacked the capacity to proceed at the time he originally pled guilty and was sentenced, then the trial court must vacate the conviction and sentence. *Willie*, 235 So.3d at 1352.

In the present case, while the record reflects no actual judgment on the merits as to defendant's competency to proceed during the six hearings, a nunc pro tunc hearing may go beyond the record to receive additional available and relevant evidence. *Snyder*, 750 So.2d at 855. In this case, sufficient evidence may exist for the court to conduct a meaningful retrospective competency hearing, including testimony from defendant's six different attorneys, who presumably interacted with him, and two different prosecutors present at the hearings during which these matters were originally to be taken up. The evaluations from the two doctors originally appointed to evaluate defendant and other medical records from the relevant time period may still be available. As this error was not raised on appeal, neither party has had the opportunity to argue the issue of availability of evidence or witnesses to assist in a retrospective determination. Since it may be possible for the trial court to retroactively address and rule upon defendant's capacity to proceed at the time he pled guilty and was sentenced, we remand this matter to determine if a meaningful inquiry could be held regarding defendant's competency at the time he pled guilty and was sentenced. If the trial court finds that a meaningful retrospective competency hearing is possible, we order the hearing to be conducted and the issue to be determined.

. . . .

*Conclusion*

Accordingly, for the reasons fully discussed herein, we remand the matter to the trial court to determine whether a meaningful retroactive inquiry can be made regarding defendant's competency to proceed at the time he pled guilty and was sentenced. If the trial court finds that a meaningful retrospective competency hearing is possible, we order the trial court to conduct the hearing and determine the issue of defendant's competency at the time of his plea and sentence before any further action on this case or appeal. Furthermore, if defendant is found to have been competent, while his plea and conviction may be affirmed, his illegal sentence shall be vacated and the district court must resentence defendant to a determinate sentence pursuant to the penalty provisions for La. R.S. 14:89 in effect at the time he committed the

offense in 2011 and 2012. If, however, the trial court is unable to conduct a meaningful retrospective inquiry into defendant's competency to proceed at the time he originally pled guilty, or the trial court finds defendant was not competent to proceed at the time he originally pled guilty, the trial court shall vacate defendant's original guilty plea and sentence, determine defendant's current competency to proceed, and take further action consistent with its finding.

*Id.* at 449-53 (footnotes omitted) (alteration in original).

A similar remedy was utilized by the first circuit in *State v. Jackson*, 16-1565, p. 10 (La.App. 1 Cir. 10/12/17), 232 So.3d 628, 636, *writ denied,* 17-1944 (La. 5/25/18), 243 So.3d 566:

In certain instances, a *nunc pro tunc* hearing on the issue of competency is appropriate "if a meaningful inquiry into the defendant's competency" may still be had. In such cases, the trial court is again vested with the discretion of making this decision as it "is in the best position" to do so. This determination must be decided on a case-by-case basis, under the guidance of **Nomey**, **Snyder**, and their progeny. The state bears the burden in the *nunc pro tunc* hearing to provide sufficient evidence for the court to make a rational decision. **Seals**, 831 So.2d at 833.

Because there is no indication in the record that the trial court held a contradictory hearing following its receipt of the physicians' reports in the record, we conditionally affirm defendant's convictions on counts one, two, and three and remand to the trial court for the purpose of determining whether a *nunc pro tunc* competency hearing may be possible. If the trial court believes that it is still possible to determine defendant's competency at the time of the trial on the charges, the trial court is directed to hold an evidentiary hearing and make a competency ruling. If defendant was competent, no new trial is required. If defendant is found to have been incompetent at the time of trial, or if the inquiry into competency is found to be impossible, he is entitled to a new trial. Defendant's right to appeal an adverse ruling is reserved. See **Snyder**, 750 So.2d at 855-56 & 863; **State v. Mathews**, 2000-2115 (La. App. 1st Cir. 9/28/01), 809 So.2d 1002, 1016, writs denied, 2001-2873 (La. 9/13/02), 824 So.2d 1191, 2001-2907 (La. 10/14/02), 827 So.2d 412.

Based on the foregoing and considering the specific facts of this case, we find that the appropriate remedy is to remand this case to the trial court to conduct an evidentiary hearing within thirty days to determine whether a *nunc pro tunc*

10

competency hearing may be possible. *See State v. R.W.W.,* 06-1253 (La.App. 3 Cir. 3/7/07), 953 So.2d 131, *writ denied,* 07-820 (La. 3/27/09), 5 So.3d 130; *State v. Singleton,* 05-622 (La. App. 5 Cir. 1/31/06), 922 So.2d 647. If the trial court finds that it is possible to determine Defendant's competency at the time of his guilty plea, the trial court is directed to hold an evidentiary hearing and make a competency ruling in accordance with La.Code Crim. P. art. 647. If Defendant is found to have been competent, no new plea proceeding is required. If Defendant is found to have been incompetent at the time he entered his plea, or if the inquiry into competency is found to be impossible, the trial court should vacate Defendant's guilty plea and sentence. Defendant's right to appeal any adverse ruling on this issue is reserved.

## DISCUSSION

In Defendant's sole assignment of error, he argues his two-year maximum sentence is constitutionally excessive. Defendant first argues the trial court improperly considered Defendant's violations of several of his bond conditions when imposing the maximum sentence. He next argues that his actions leading to his arrest and conviction were not "the worst of the worst" when compared to other offenders, rendering the imposition of the maximum sentence an excessive punishment. Additionally, he argues his sentence is not proportional when compared to more serious crimes. Third, Defendant argues that the trial court failed to properly weigh the mitigating evidence that he was in a serious helicopter crash which caused physical and mental problems, leading him to act irrationally. And finally, Defendant argues that the trial court improperly considered the victim impact statement of his daughter, which did not comply with the requirement of focusing on the impact to the victim, but was simply personal complaints against her father, Defendant.

11

Defendant notes that during sentencing, the trial court made it clear that part of the reason for imposing the maximum sentence was because Defendant violated his bond conditions. The trial court stated during sentencing:

> And I was particularly shocked by the fact that, after we had a hearing about his violations of house arrest – and knowing that this is all pending – he did it again.
>
> And, you know, even after he knew that I said, I will have you arrested if you do it again, he didn't care. And that is of great deal of concern to this Court.
>
> Because the idea of sentencing is to impose sanctions that will keep someone from reoffending and protect the victims. And I don't know of any sanctions I can impose on him – other than sending him to jail – that will keep him from doing it again. Because he does whatever he wants to do.

Defendant willingly concedes that he violated the court's bond conditions while he was out of jail on home incarceration. However, he argues that there was no evidence presented that he contacted the victims during the period he was out on bond and on home incarceration. Defendant asserts that all allegations of stalking or intimidation took place before he was arrested. Thus, Defendant argues the violations on bond for leaving his house did not imply jail was required to keep him from reoffending and protecting the victims, as suggested by the trial court. Defendant further argues that the trial court imposed the proper sanction for his bond violations, which was revocation of his bond. Defendant claims that he did not threaten public safety while he was out violating his bond. He admits he was seen driving a vehicle by one of the victims, but Defendant claims he was driving near his own home, not the victims' home. Defendant asserts his sentence for stalking should be based on the facts that led to him being charged and arrested, and the trial court's over-reliance on violation of bond to impose a more severe sentence was an abuse of discretion.

Next, Defendant argues that he is not the worst kind of offender. He admits the text messages and videos he sent the victims meet the standard of intentional and repeated harassing, but he claims the messages were just words. Defendant claims the only allegation of him being near the victims was before the restraining orders were ever filed. After leaving the sticky note at the victims' house, Defendant claims his only actions were through the phone and text. Defendant asserts he never acted on any of his threats, never returned to their home, and never sat outside their place of business. Defendant further asserts that he never sent anyone to talk to or threaten the victims, and there is no evidence that he continued communication after the charges were filed. Additionally, Defendant notes he pled guilty to the crime and was prepared to take responsibility for his actions, but the court failed to consider this fact in the record. Defendant argues his actions in sending the text messages do not qualify him as the "most egregious" of offenders and his case should be remanded to the trial court for resentencing.

Defendant also asserts his sentence is not proportional when compared to more serious crimes. Defendant notes that his ex-wife, a victim in this case, would qualify as a "family member" as defined by La.R.S. 14:35.3(B)(4). He claims that had he physically battered his ex-wife, he could have been charged with domestic abuse battery, under La.R.S.14:35.3. Under that statute, he could have been sentenced from thirty days to six months for a first offense and up to one year at hard labor for a second offense. La.R.S. 14:35.3(C)-(D). Defendant notes that his current sentence for sending threatening messages is twice the length he could have received if he had used force or violence against her. Defendant argues, therefore, that his sentence should be reconsidered because, under the facts of this case, it is clearly excessive.

Defendant further claims the trial court failed to comply with the sentencing guidelines in La.Code Crim.P. art. 894.1.[2] During sentencing, the trial court cited La.Code Crim.P. art. 894.1, stating:

> And let me just say something else, so that I'm complying with 894.1, as far as other reasons for imposition of this sentence. I do want to note that he used threats of actual violence against these victims and that there were multiple victims in this case, as well as the other factors that I've already mentioned.

Defendant does not dispute that he threatened actual violence against multiple victims, but he claims the trial court ignored and failed to consider the numerous mitigating factors. First, Defendant was likely suffering from post-traumatic stress after the helicopter crash, which may have contributed to his actions. Defendant notes Dr. Warren Lowe, Ph.D., M.P. indicated in his Sanity Evaluation report that although Defendant "was aware of the rightness and wrongness of his actions at the time of the alleged offenses, there is the likelihood that he was suffering from diminished capacity due to acute stress reaction (helicopter crash and prolonged exposure which resulted in some acute stress symptoms) and post-concussion syndrome due to mugging." Defendant argues this information should have been considered rather than disregarded. Defendant submits there is a lack of knowledge about brain injuries and the fact is he only sent the threats and text messages after the traumatic helicopter crash.

Additionally, Defendant notes that he suffers from diabetes and pancreatitis, both of which cause problems with regulating his blood sugar. He claims that these

---

[2] Louisiana Code of Criminal Procedure Article 894.1 provides a list of factors the trial court can consider when imposing a sentence. This article also allows the trial court to consider any other relevant mitigating circumstance.

problems regulating his blood sugar can make him appear intoxicated and lessen his impulse control.

Defendant further claims that while he was out on bond, he was mugged and hit on the head, possibly resulting in a concussion and brain injury. While this incident occurred after the allegations giving rise to the stalking charge, Defendant argues that it is relevant to the weight the trial court gave to Defendant's impulse control and his repeated efforts to do "whatever what he wants to do."

Defendant notes that while the trial court claimed he was uncontrollable and unable to follow directions, based on the fact that he left his house several times while on house arrest, he did successfully complete probation for a 2012 conviction for the offense of unauthorized entry of an inhabited dwelling. Defendant argues that this is evidence he can follow directions and limitations placed on him by a probation officer. Defendant further argues that although he violated the bond condition to remain at his house while on house arrest, he complied with the most important condition of his bond – to have no contact with his victims.

Defendant asserts that the trial court also failed to consider the physical hardship jail will have on him. He has medical conditions, such as diabetes and necrotizing pancreatitis, that must be treated by specialized doctors or he could die.

Defendant notes that one of the conditions of his bond was that he participate in pretrial drug testing. There are no allegations that he failed a drug test while out on bond.

Defendant's last argument is that the court gave improper consideration to the victim impact statement written by his daughter, Victoria Guillory. Victoria is also the daughter of Defendant's ex-wife, Andree Courville, one of the victims in this proceeding. Defendant's attorney objected to the admissibility and relevancy of

15

Victoria's letter in the Motion to Reconsider Sentence and at the May 24, 2022 hearing. The trial court overruled the objection and stated it could consider the letter.

Defendant acknowledges that Victoria is defined as a "victim's family" member and had certain rights under La.R.S. 46:1842(18). Victims' family members have the right to make impact statements. *See* La.R.S. 46:1844(K)(1)(b). Louisiana Revised Statutes 46:1844(K)(2) lists what may be included in such a statement:

The statement of the victim or the victim's family may:

(a) Identify the victim of the offense.

(b) Itemize any economic loss that has been or may be reasonably suffered by the victim as a result of the offense.

(c) Identify any physical injury suffered by the victim as a result of the offense, along with its seriousness and permanence.

(d) Describe any change in the victim's personal welfare or familial relationships as a result of the offense.

(e) Identify any request for medical or counseling services needed by the victim or the victim's family as a result of the offense.

(f) Contain any other information related to the impact of the offense upon the victim or the victim's family that the trial court requires.

(g) Contain any other information that the victim or victim's family wishes to share with the court regarding the overall effect of the crime upon the victim and the victim's family.

Defendant argues that, based on the statute, a statement from a victim's family member is limited to the "impact" the crime has had on the victim or the victim's family. Victoria's statement is largely about the problems she had with her father, Defendant, in the past, and she failed to mention the direct impact the stalking had on her mother and stepfather. Defendant argues the purpose of the statement is to speak to the impact on the victim and not about how bad the defendant is as a person

16

in general. Thus, Defendant asserts that the admission of Victoria Guillory's statement for sentencing purposes was improper.

For all of the above reasons, Defendant argues that he is not the worst kind of offender and the trial court failed to give credit to the relevant mitigating factors; thus, his maximum sentence for stalking is excessive and this court should reverse his sentence and impose a lesser sentence, or remand to the trial court for a new sentencing hearing.

The State argues that Defendant's sentence is not excessive. The State notes Defendant sent violent and threatening messages to multiple victims in this case and admitted to disobeying the trial court's bond conditions. The State argues the imposition of two years for stalking where Defendant threatened multiple victims while also violating a protective order is not grossly disproportionate to Defendant's actions.

The State further argues the trial court complied with the sentencing guidelines and could have sentenced Defendant to a "day-for-day total of 2 years under La.R.S. 15:571.3 (which states the trial court, in its discretion, can prohibit the earning of any 'good time' diminution of sentence for any person convicted of a violation of R.S. 14:40.2, or Stalking), but the Court choose not to do so, benefiting the defendant…." Defendant was therefore not sentenced to the absolute maximum sentence. Additionally, the State notes Defendant presented witnesses on his behalf during the sentencing hearing. The trial court heard all witnesses and explained why it chose to sentence Defendant to this particular sentence. For these reasons, the State argues Defendant cannot show any abuse of discretion on the part of the trial court.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958[, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996)].

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06 (first alteration in original), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

In *State v. Baker*, 06-1218, pp. 7-8 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, 89, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, which established that an appellate court should consider "(1) the nature of the crime, (2) the nature and background of the offender, and (3) the sentences imposed for similar crimes."

In this case, looking first to the nature of the crime, Defendant pled guilty to stalking while a protective order was in place. Under La.R.S. 14:40.2(B)(3), the penalty for stalking when a protective order or restraining order is in effect is imprisonment with or without hard labor for not less than ninety days and not more than two years or a fine of not more than five thousand dollars, or both. This crime involved Defendant sending threatening messages to the victims, even after protective orders had been filed.

Second, in looking at the nature and background of the offender, we look to the remarks made during the sentencing hearing. At the hearing, Defendant noted he was sixty-three years old. The trial court noted Defendant had two prior felony convictions: one in 1987 for possession with intent to distribute cocaine, and another in 2012 for unauthorized entry of an inhabited dwelling.[3] The trial court asked for evidence in mitigation and the defense noted they had statements from Defendant's

---

[3] We note that in the unauthorized entry of an inhabited dwelling, the victims were the same as those in those in this matter, Andree and Coy Courville.

brother and sister. The State then submitted victim impact statements from Andree Courville and Defendant's daughter, Victoria Guillory.

Additionally, the State called Coy Courville to the stand for his victim impact statement. Mr. Courville indicated he is married to Andree Courville and that he was a victim in this matter. He stated he received hundreds of messages from Defendant, which included: threats of death; threatening having a sniper ready in a ghillie suit when he least expected it; videos of Defendant threatening to cut his throat; threats of committing other acts of violence against Mrs. Courville; and threatening to destroy the Courvilles' houses and property. Mr. Courville stated Defendant came by the Courvilles' house and put a message in the mailbox. In this message, Defendant demanded Mrs. Courville contact him, or he was going to find a way to talk to her. Mr. Courville said both he and his wife had protective orders against Defendant, but Defendant continued to text Mrs. Courville. Mr. Courville stated Defendant had been sending threatening messages for years and making comments about him. Mr. Courville indicated Defendant went to a rehabilitation center after his 2012 conviction for the home invasion, but his time in the center did not change Defendant as he continued to send messages. Mr. Courville testified that he was a State trooper, had retired, and then gone back to work for the State police as an investigator; yet, Defendant continued to call and make threats about killing him and destroying his property. Mr. Courville stated that he knew Defendant violated the conditions of his bond, which he believed showed Defendant's refusal to listen.

In closing arguments, defense counsel was able to present several mitigating factors to the trial court. Defendant spent thirty-nine days in jail in connection with this case and spent one hundred twenty days on house arrest. Permanent protective orders have been issued to protect both victims in this case. Defendant admitted fault

by pleading guilty to the charge of stalking. Defendant was involved in a near-death experience with the helicopter crash. Defendant has created jobs and helped stimulate the community. Defendant has raised children, including a stepdaughter.

Following closing arguments, the trial court found the following:

> I find this case extremely sad, for several reasons. But the main reason I find it extremely sad is because Mr. Guillory willfully does things that he knows he shouldn't be doing. And he's – he's not stupid. And he's not crazy. He is just very willful.

> And that's of great concern to the Court, in terms of public safety. He has shown a great deal of disdain for any type of authority.

> And look, you know, everybody likes to do what they think they want to do. But we all realize, within the rules of society, that's not how it works. And particularly when what you want to do threatens, intimidates, and puts other people in harm's way.

> And I was particularly shocked by the fact that, after we had a hearing about his violations of house arrest – and knowing that this was all pending – he did it again.

> And, you know, even after he knew that I had said, I will have you arrested if you do it again, he didn't care. And that is of great deal of concern to this Court.

> Because the idea of sentencing is to impose sanctions that will keep someone from re-offending and protect the victims. And I don't know of any sanctions I can impose on him – other than sending him to jail – that will keep him from doing it again. Because he does whatever he wants to do.

> And it's – I just find that very sad. He's, apparently, been successful, he has talents. But he's got some demons that he just won't control.

> And, you know, I mean, it was very sad to read his daughter's letter. Because I know, like any daughter, you can't help but love your father, whether they're abusive or not.

> And I'm sure that was hard for her to write that letter. But I think she wrote it heartfelt, from experience of what her life has been like because of what Mr. Guillory chooses to do.

> You know, I thought a lot about whether to suspend part of the sentence in order to give him a chance to go for counseling. But it does

– it's not going to matter, because, you know, he – he does what he wants to do. He's been through counseling. He's been seen by people.

And this whole idea that he was suffering some post-traumatic stress disorder that caused this – You know, I'm sorry. But he had done the same thing in 2010 or 2012, when there was a home invasion charge reduced to unauthorized entry. So that wasn't prompted by the helicopter accident.

You know, like I said, it's very sad to me to be in this situation, where I feel like I don't have any options. But that's what Mr. Guillory has presented to me, is that I have no option but to give him jail time.

Because he's not going to comply. And he's made it clear to me he's not going to comply. Because he doesn't believe anybody can tell him what to do.

The trial court was very thorough in outlining everything it considered concerning Defendant's nature and background when deciding on his sentence. Additionally, the trial court stated that it wanted to be sure to comply with the sentencing factors contained in La.Code Crim.P. art. 894.1:

And let me just say something else, so that I'm complying with 894.1, as far as other reasons for imposition of this sentence.

I do want to note that he used threats of actual violence against these victims and that there were multiple victims in this case, as well as the other factors that I've already mentioned.

The third and final factor in the *Baker* analysis is a comparison of the sentences imposed for similar crimes. In *State v. Miller*, 18-639 (La.App. 3 Cir. 3/27/19), 269 So.3d 806, *writ denied*, 19-659 (La. 11/5/19), 281 So.3d 670, the defendant was charged with one count of stalking, second offense, a violation of La.R.S. 14:40.2(4), and sentenced to twenty years at hard labor.[4] The defendant

---

[4] Louisiana Revised Statutes 14:40.2(4) provides, in pertinent part: "Upon a second conviction occurring within seven years of a prior conviction for stalking, the offender shall be imprisoned with or without hard labor for not less than five years nor more than twenty years." This statute further provides that the sentence shall be served without benefit of probation, parole, or suspension of sentence, and there may be a fine of not more than five thousand dollars, or both a fine and a term of imprisonment. La.R.S. 14:40.2(4).

argued his sentence, the maximum possible term, was excessive because the trial court failed to give adequate consideration to the sentencing guidelines and his sentence should be consistent with other cases. *Id.* In affirming the sentence, this court agreed that the defendant was a most egregious offender as he was convicted twice for stalking the same victim over a period spanning eighteen years, with evidence demonstrating no change in behavior following the first conviction. *Id.* This court noted that the trial court properly considered the defendant's repeat behavior over a period of time.

In *State v. Saucier*, 11-246 (La.App. 3 Cir. 11/9/11), 81 So.3d 691, *writ denied*, 12-227 (La. 6/22/12), 91 So.3d 966, this court affirmed the defendant's sentence of ten years for stalking, second offense. While the trial court did not find aggravating or mitigating factors under La.Code Crim.P. art. 894.1, the trial court did note the defendant's lengthy criminal history, how the defendant had violated four protective orders, and subjected the victim to years of abuse and threats. *Id.* The victim in this case was the defendant's former wife with whom he had a child, and the defendant had previously been convicted of stalking another victim.

The sentencing ranges for stalking, second offense are not comparable to the instant offense; however, the trial courts' reasons for these sentences are relevant to the instant case. In *Saucier*, 81 So.3d 691, the trial court noted Defendant's criminal history, the victim was his former wife, and his pattern of directly violating protective orders. In *Miller*, 269 So.3d 806, the defendant was given the maximum sentence for stalking the same victim more than once, and the trial court noted Defendant's repeat behavior and how he was not changing.

In the instant case, Defendant not only sent threatening messages to two victims but also continued to send these messages despite the protective order.

Additionally, Defendant refused to comply with the conditions of his bond requirement as set by the trial court. Even if Defendant did not make direct contact while he was outside his house, he still failed to comply with the trial court's order to remain in his home. As Defendant pointed out, "[g]enerally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78. Defendant can be placed within that category based on his repeated behavior; the content of the messages, which included threats of violence and causing harm to the victims and their property; and Defendant's refusal to comply with court orders.

A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside as excessive absent a manifest abuse of discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7. Additionally, in *State v. Wortham,* 47,431, pp. 4-5 (La.App. 2 Cir. 11/14/12), 107 So.3d 132, 135–36 (emphasis added), the second circuit provided a useful recitation of the law:

> **Where the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even where the trial court has not fully complied with the sentencing guidelines of La.C.Cr.P. art. 894.1**. *State v. Lanclos,* 419 So.2d 475 (La.1982); *State v. McGraw,* [616 So.2 262 (La.App 2 Cir. 1993).] The important elements which should be considered are the defendant's personal history, prior criminal record, seriousness of offense, and the likelihood of rehabilitation. *State v. McGraw, supra.* The trial court is not required to weigh any specific matters over other matters. *State v. Moton,* 46,607 (La.App.2d Cir. 9/21/11), 73 So.3d 503, *writ denied,* 11–2288 (La. 3/30/12), 85 So.3d 113; *State v. Caldwell,* 46,645 (La.App.2d Cir. 9/21/11), 74 So.3d 248, *writ denied,* 11–2348 (La. 4/27/12), 86 So.3d 625.
>
> . . . .
>
> **When a defendant has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence**

**possible for the pled offense**. *State v. Fatheree*, [46,686, p. 6 (La.App. 2 Cir. 11/2/11), 77 So.3d 1047, 1051]*; State v. Germany,* 42,239 (La.App.2d Cir.4/30/08), 981 So.2d 792.

Additionally, we note that the trial court considered the letters in mitigation and directly spoke to Defendant's helicopter crash. As to the crash, the trial court did not attach much weight to the possibility that Defendant had post-traumatic stress because the trial court noted Defendant had exhibited this behavior back in 2012 before the crash. Furthermore, as indicated in *Wortham*, 107 So.3d 132, Defendant was originally charged with cyberstalking, two counts of violating a protective order, and stalking. However, the State agreed to drop the remaining charges since Defendant pled guilty to stalking. Defendant received a significant reduction in possible punishment based on his plea, so the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. For these reasons, we find that the trial court did not abuse its discretion in sentencing Defendant to the maximum sentence.

Finally, prior to the hearing on the motion to reconsider sentence, Defendant filed a supplemental memorandum in support of his motion to reconsider sentence in which he argued that the trial court improperly considered Defendant's daughter's victim impact statement when sentencing Defendant. Defendant argues his daughter's statement was irrelevant to the impact Defendant's actions had on the victims. In this letter, Victoria recounted the abuse she suffered from her father, and she asked the court to sentence Defendant to the highest sentence. Victoria further wrote she was told by Defendant that he would hurt her mother and stepfather. Victoria indicated she believed Defendant was fully capable of doing this, and she was afraid they would continually be tormented by him. Under La.R.S. 46:1844(K), the victim or designated family members have a right to be present and heard at all

25

critical stages of the proceedings. This article provides that the victim's family members shall have the right to make written and oral victim impact statement. La.R.S. 46:1844(K)(1)(b). The statute provides, in pertinent part, that the statement may contain any other information related to the impact of the offense upon the victim or the victim's family that the trial court requires or any other information regarding the overall effect of the crime upon the victim and victim's family. La.R.S. 46:1844(K)(2). Under La.R.S. 46:1842(18), "victim's family" includes a spouse, parent, child, stepchild, siblings, or legal representative of the victim.

This court looks to *State v. Reese*, 13-1905, p. 4 (La.App. 1 Cir. 6/25/14) (unpublished opinion) (alterations in original), *writ denied*, 14-1592 (La. 3/6/15), 161 So.3d 13, for guidance:

> The defendant also argues the trial court erred in allowing improper victim impact statements at the sentencing hearing. At the hearing, J.A.'s mother's therapist testified about how she has been affected by her son's murder; and J.A.'s father and grandfather testified. J.A.'s grandfather described his hatred toward the defendant and added that, if the defendant ever left prison, he (grandfather) hoped it would "be feet first in a pine box." J.A.'s father asked for the maximum sentence. According to the defendant, all of this testimony was improper and had no bearing on whether his juvenile characteristics warranted a life sentence without the possibility of parole.
>
> In *Payne v. Tennessee,* 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991), the United States Supreme Court recognized that "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question," and "[i]n the majority of cases . . . [it] serves entirely legitimate purposes." Furthermore, "for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Id.* at 825, 111 S.Ct. at 2608. The Court concluded "that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar." *Id.* at 827, 111 S.Ct. at 2609. While evidence depicting the impact of the loss on the victim's survivors is permitted, the evidence may not descend into detailed descriptions of the good qualities of the victim, particularized narrations of the sufferings of the survivors, or what opinions the survivors hold with

26

respect to the crime or the murderer. *State v. Bernard,* 608 So.2d 966, 972 (La.1992). *See State v. Williams,* 96–1023 (La.1/21/98), 708 So.2d 703, 721–22, *cert. denied,* 525 U.S. 838, 119 S.Ct. 99, 142 L.Ed.2d 79 (1998).

We find nothing improper about the testimony of the therapist of J.A.'s mother. Assuming, but not deciding, that the testimony of J.A.'s father or grandfather exceeded the boundaries set forth in *Bernard,* any possible error was harmless. *See* La.Code Crim. P. art. 921. A good deal of mitigation evidence, including the defendant's own testimony, was introduced at the sentencing hearing. In a hearing that comprised 135 pages of testimony, seven of those pages totaled J.A.'s father's and grandfather's testimony. Thus, any possible prejudice was diluted by the entirety of the testimony, comprised largely of the opinions of doctors and other mental health experts. Finally, it must be noted that surely the trial court regarded the testimony of these victim impact witnesses as normal human reactions to the death of a loved one. That the victim's survivors might have little or no sympathy for the defendant certainly would come as no surprise to the trial court. *See State v. Taylor,* 93–2201 (La.2/28/96), 669 So.2d 364, 371, *cert. denied,* 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996). *See also Williams,* 708 So.2d at 720–22; *State v. Schwarz,* 13–255 (La.App. 3 Cir. 10/9/13), 123 So.3d 1256, 1259.

Under La.Code Crim.P. art. 921, a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect the substantial rights of the accused. Louisiana Code of Criminal Procedure Article 905.2(A) provides:

The sentencing hearing shall focus on the circumstances of the offense, the character and propensities of the offender, and the victim, and the impact that the crime has had on the victim, family members, friends, and associates. The victim or his family members, friends, and associates may decline the right to testify but, after testifying for the state, shall be subject to cross-examination. The hearing shall be conducted according to the rules of evidence. Evidence relative to aggravating or mitigating circumstances shall be relevant irrespective of whether the defendant places his character at issue. Insofar as applicable, the procedure shall be the same as that provided for trial in the Code of Criminal Procedure. The jury may consider any evidence offered at the trial on the issue of guilt. The defendant may testify in his own behalf. In the event of retrial, the defendant's testimony shall not be admissible except for the purposes of impeachment.

We find that when viewing Victoria's statement in light of La.Code Crim.P. arts. 905.2 and 921 as well as *Reese*, 13-1905, Defendant was not prejudiced by the admission of the full statement. In the statement, Victoria wrote about Defendant's character, and in her concluding paragraph, she directly referenced how Defendant threatened harm upon her family and how she was afraid of him. While the trial court noted it read and considered his daughter's statement, the trial court also provided multiple other reasons for imposing the maximum sentence as well as discounting some of the mitigating factors. Additionally, the trial court further indicated it reviewed and considered letters in mitigation. The trial court directly referenced how Defendant follows his own rules despite there being a protective order or conditional bond requirement and imposed a sentence to protect the victims. For these reasons, we find there was no error in admitting the full statement. If there was such an error, the error was harmless because the trial court articulated reasons for the sentence.

## CONCLUSION

We conditionally affirm Defendant's conviction and sentence. The case is remanded to the trial court to conduct an evidentiary hearing within thirty days to determine whether a *nunc pro tunc* competency hearing may be possible. If the trial court finds that it is possible to determine Defendant's competency at the time of his guilty plea, the trial court is directed to hold an evidentiary hearing and make a competency ruling in accordance with La.Code Crim.P. art. 647. If Defendant is found to have been competent, no new plea proceeding is required. If Defendant is found to have been incompetent at the time he entered his guilty plea, or if the inquiry into competency is found to be impossible, the trial court shall vacate Defendant's guilty plea and sentence. Defendant's right to appeal any adverse ruling on this issue

28

is reserved, and in the absence of such appeal, we affirm Defendant's conviction and sentence.

**CONDITIONALLY AFFIRMED AND REMANDED.**